**Miscellaneous No. _____**

# United States Court of Appeals for the Federal Circuit

In re: DATANET LLC,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in Case No. 6:22-CV-01142-OLG-DTG, the Honorable Judge Orlando L. Garcia*

## NON-CONFIDENTIAL PETITION FOR WRIT OF MANDAMUS

ALDEN G. HARRIS
HEIM, PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
(713) 221-2000
aharris@hpcllp.com

*Counsel for Petitioner*

JULY 3, 2024

CP COUNSEL PRESS    (800) 4-APPEAL • (329834)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** _____

**Short Case Caption** In re: DATANET LLC

**Filing Party/Entity** DATANET LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/03/2024

Signature:  /s/ Alden G. Harris

Name:  Alden G. Harris

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Datanet LLC | | WSAPI, LLC |
| | | COVASAH, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Alden G. Harris, Heim, Payne and Chorush, LLP | Sharif Ahmed, Messner Reeves LLP | Michael J. Lyons, Morgan, Lewis & Bockius, LLP |
| Gregory P. Sitrick, Messner Reeves, LLP | Elizabeth M. Chiaviello, Morgan, Lewis & Bockius, LLP | Karon F. Fowler, Morgan, Lewis & Bockius, LLP |
| Isaac S. Crum, Messner Reeves, LLP | Robert C. Bertin, Morgan, Lewis & Bockius, LLP | Nicholas A. Restauri, Morgan, Lewis & Bockius, LLP |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ............................................................................ 1

RELIEF SOUGHT .......................................................................... 2

ISSUE PRESENTED ....................................................................... 3

BACKGROUND AND PROCEDURAL HISTORY ................................. 3

REASONS FOR ISSUING THE WRIT ............................................... 4

    I.    Datanet Has a Clear and Indisputable Right to the Writ of Mandamus ................................................................. 7

        A.    The Relative Ease of Access to Sources of Proof ........... 9

            1.    The Magistrate Judge Correctly Weighed this Factor Against Transfer ................................ 9

            2.    The District Court Erred by Holding this Factor Favors Transfer ....................................... 14

        B.    The Availability of Compulsory Process ..................... 22

            1.    The Magistrate Judge Correctly Weighed this Factor Against Transfer .............................. 22

            2.    The District Court Erred in Re-Weighing this Factor in Favor of Transfer ........................ 25

        C.    The Cost of Attendance for Willing Witnesses ........... 31

            1.    The Magistrate Judge Correctly Weighed this Factor Against Transfer .............................. 31

            2.    The District Court Erred by Re-Weighing this Factor in Favor of Transfer ........................ 34

        D.    Local Interest ............................................................ 38

            1.    The Magistrate Judge Correctly Weighed this Factor Against Transfer .............................. 39

2.    The District Court Erred by Re-Weighing
this Factor in Favor of Transfer........................... 39

E.    The Remaining Four Factors Do Not Favor
Transfer ....................................................................... 42

CONCLUSION ................................................................................. 42

CONFIDENTIAL MATERIAL OMITTED

The material redacted from this brief is subject to a protective order.  The confidential information on pages 1, 11-13, 19-20, 22-25, 28-31, 33-37 and 41, relates to business information and employee information, which have been designated as confidential.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alphonse v. Arch Bay Holdings, L.L.C.*,
618 F. App'x 765 (5th Cir. 2015)....................................................6, 8

*Anderson v. Bessemer City*,
470 U.S. 564 (1985) ........................................................................7

*Celorio Garrido v. Holt*,
547 F. App'x 974 (Fed. Cir. 2013) ..................................................26

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022)........................................14, 18, 22, 30

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024)...................................................*passim*

*In re Google LLC*,
No. 2021-178, 2021 U.S. App. LEXIS 33789
(Fed. Cir. Nov. 15, 2021) ...........................................................9, 19

*In re Planned Parenthood*,
52 F.4th 625 (5th Cir. 2022)............................................................9

*In re Rollings*,
451 F. App'x 340 (5th Cir. 2011).........................................8, 39, 40

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023)...................................................*passim*

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..................................................*passim*

*Moore v. Ford Motor Co.*,
755 F.3d 802 (5th Cir. 2014) .............................................6, 7, 8, 21

*Skinner v. Reed*,
544 F. App'x 398 (5th Cir. 2013)....................................................26

*Tokio Marine & Fire Ins. Co. v. Flora MV*,
235 F.3d 963 (5th Cir. 2001) ......................................................9, 39

*United States v. Harris,*
    740 F.3d 956 (5th Cir. 2014) .............................................. 7, 8, 21, 38

*United States v. Wright,*
    777 F.3d 769 (5th Cir. 2015) .................................................. 2, 8, 21

## Statutes & Other Authorities:

28 U.S.C. § 636(b)(1)(A) .......................................................... 5, 6

Fed. R. Civ. P. 72(a) .......................................................... *passim*

CONFIDENTIAL MATERIAL REDACTED

# INTRODUCTION

Under §1404(a), the movant bears the elevated burden to prove "the marginal gain in convenience will be *significant*" and "its evidence makes it plainly obvious—*i.e.*, clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). A "mere preponderance of the evidence is insufficient" to carry this burden. *Id.* at n.3.

Despite months of venue discovery, the movant Dropbox never identified any sources of proof in California, never identified a single witness subject to compulsory process in California, only identified one allegedly relevant willing witness in California (its declarant), and never showed the events that gave rise to the suit occurred in California.

Datanet proved Dropbox has relevant sources of proof in Texas including its document server, that Dropbox has at least ▮ relevant former employees subject to compulsory process in WDTX, that Dropbox has at least ▮ relevant current employees in Texas who are willing witnesses, and that design and development of the accused product is

ongoing in Texas. Datanet specifically identified each of these sources of evidence and Dropbox admitted they are relevant.

In a nineteen-page order, the Magistrate Judge found that "Dropbox failed to carry its burden of proving the Northern District of California is 'clearly more convenient'" and denied transfer. Appx367.

The District Court reversed the Magistrate Judge and transferred the case. Appx468-485. This would have been an abuse of discretion under a *de novo* standard of review, because Dropbox did not come close to meeting its burden of proof. However, the District Court was not conducting *de novo* review—it was required to apply the "clearly erroneous" standard of Rule 72(a) and defer to the Magistrate Judge's "plausible" findings of fact. *United States v. Wright*, 777 F.3d 769, 773 (5th Cir. 2015). Given Dropbox's failure of proof and Datanet's overwhelming evidence, the Magistrate Judge's findings were more than "plausible," and reversal was a clear abuse of discretion.

## RELIEF SOUGHT

Datanet respectfully requests the Court grant this petition for a writ of mandamus, vacate the District Court's Order overturning the Magistrate Judge's Order, and remand with instructions to transfer the

case back to the United States District Court for the Western District of Texas.

## ISSUE PRESENTED

Whether the District Court abused its discretion by transferring this case, overturning the Magistrate Judge's well-supported findings of fact to which the District Court was required to defer under the "clearly erroneous" standard of review.

## BACKGROUND AND PROCEDURAL HISTORY

Datanet sued Dropbox in the Western District of Texas on October 31, 2022, alleging Dropbox's file hosting and backup services infringe its asserted patents. Appx468. Datanet is a Nevada LLC with its operations in Colorado Springs, CO. *Id.*

Dropbox filed a motion to transfer to the Northern District of California on May 10, 2023. Appx15. After several months of venue discovery, Datanet filed its opposition to Dropbox's motion (Appx129-143) attaching supporting evidence (Appx146-313).

On August 15, 2023, U.S. District Judge Garcia referred the case "to U.S. Magistrate Judge Gilliland for disposition of all pretrial matters." Appx470.

The Magistrate Judge issued a nineteen-page Order on October 17, 2023 denying Dropbox's motion to transfer. Appx349-367. Dropbox then filed objections to the Magistrate Judge's Order, which the parties fully briefed. Appx393-445.

On March 28, 2024, the District Judge overruled the Magistrate Judge and directed the case be transferred to Northern California, which it immediately was. Appx468-485. The case is stayed there pending the outcome of Dropbox's IPRs. *Datanet LLC v. Dropbox, Inc.*, No. 3:24-cv-1972, Dkt. 149 (N.D. Cal.).

## REASONS FOR ISSUING THE WRIT

"There are three requirements for a writ of mandamus:" (1) "there must be no other adequate means to attain the relief desired," (2) "the right to issuance of the writ must be clear and indisputable," and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Clarke*, 94 F.4th at 516 (cleaned up).

"The first requirement is met because there is no other avenue for petitioners to seek recourse for the erroneous transfer decision." *Id.* An ordinary appeal "will provide no remedy" for an erroneous transfer

4

decision because "the prejudice suffered cannot be put back in the bottle" after the case has been tried. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008).

The second requirement is met because "the district court's transfer decision was patent error." *Clarke*, 94 F.4th at 516. The Magistrate Judge correctly found that four factors weighed against transfer and not a single factor favored transfer to the Northern District of California. Appx357; Appx360; Appx364-67; Appx472. The "petitioners' right to the writ is clear and indisputable" where "[n]ot a single relevant factor favors [the movant's] chosen venue … we have granted mandamus for less egregiously erroneous transfers." *Clarke*, 94 F.4th at 516. The error here is even more egregious because the District Court failed to give deference to the Magistrate Judge's findings of fact, which may only be set aside if "clearly erroneous" or "contrary to law." 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a).

The third requirement is also met. Granting the writ is "particularly appropriate when the issues also have an importance beyond the immediate case." *Clarke*, 94 F.4th at 516. The procedural posture of this case is unusual. The District Court reversed the

5

Magistrate Judge's order denying transfer, purporting to find the Magistrate Judge "clearly erred." Appx485. Neither this Court nor the Fifth Circuit has addressed a case where a district judge reversed a magistrate judge's denial of venue transfer. This presents this Court with an opportunity to clarify the standard of review—that the Magistrate Judge's factfinding is owed deference.

By statute and rule, magistrate judges are empowered to "hear and determine" nondispositive matters referred to them and issue a written order; such an order can only be reversed by the district judge if it "is clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a). Under Rule 72(a), the district judge acts like a court of appeals applying a "clear error" standard of review to the magistrate judge's findings of fact: "The [district] court ***must*** defer to [the magistrate judge's] order unless the order is clearly erroneous or contrary to law." *Alphonse v. Arch Bay Holdings*, L.L.C., 618 F. App'x 765, 768 (5th Cir. 2015) (emphasis added); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) ("A magistrate judge's non-dispositive order ***may only*** be set aside if it 'is clearly erroneous or is contrary to law.' Accordingly, we review 'factual findings under a clearly erroneous

6

standard,' while 'legal conclusions are reviewed de novo.'") (emphasis added).

Accordingly, on mandamus review, it is the magistrate judge's findings of fact that are owed deference under the "clearly erroneous" standard. *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) ("we [the Fifth Circuit] review [the magistrate judge's] 'factual findings under a clearly erroneous standard'"). The reviewing district judge's contrary view of the facts, even if reasonable, is not entitled to deference because "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Harris*, 740 F.3d 956, 967 (5th Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

## I.    Datanet Has a Clear and Indisputable Right to the Writ of Mandamus

The Magistrate Judge wrote a detailed order denying transfer with findings of fact on each *Volkswagen* factor. Appx349-367. The Magistrate Judge correctly concluded that "four of the eight factors were neutral, and four weighed against transferring to California." Appx472.

The District Court erred by reversing the Magistrate Judge. Appx468-485. *First*, the District Court abused its discretion by finding facts in Dropbox's favor that were not supported (and frequently contradicted) by evidence in the record. *Second*, the District Court erred by overruling the Magistrate Judge's well-supported findings of fact, to which the District Court "must defer" under the clear error standard. *Alphonse*, 618 F. App'x at 768; *Moore*, 755 F.3d at 806.

The clear error standard is differential. Even if the district judge views the facts differently, the district judge is required to defer to the magistrate judge's "plausible" findings of fact. "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *Wright*, 777 F.3d at 773. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Harris*, 740 F.3d at 967.

Credibility determinations are entitled to especially great deference under the clear error standard. "Where the court's finding is based on its decision to credit the testimony of one witness over that of another, 'that finding, if not internally inconsistent, can virtually never be clear error.'" *In re Rollings*, 451 F. App'x 340, 349 (5th Cir. 2011).

8

Under the clear error standard, "[f]indings based on the credibility of witnesses demand even greater deference." *Tokio Marine & Fire Ins. Co. v. Flora MV*, 235 F.3d 963, 970 (5th Cir. 2001).

### A. The Relative Ease of Access to Sources of Proof

This factor "focuses on the location of documents and physical evidence." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). "When 'the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Id.* (cleaned up). The "location of evidence bears much more strongly on the transfer analysis when … the evidence is physical in nature." *In re Planned Parenthood*, 52 F.4th 625, 630 (5th Cir. 2022). The court may also consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021).

### 1. The Magistrate Judge Correctly Weighed this Factor Against Transfer

The Magistrate Judge correctly found Dropbox "fails to demonstrate that NDCA is clearly more convenient" because: (1) "the accessibility of Dropbox's electronic data does not demonstrably favor either venue," (2)

9

"Dropbox could not identify any evidence that is inaccessible in or from WDTX," (3) Dropbox failed to identify document custodians in California, and (4) Datanet's documents in Colorado Springs do not favor transfer. Appx355-357.

*First*, the Magistrate Judge considered Dropbox's two relevant servers. Dropbox identified a server in "northwest Oregon" where it "stores and controls its source code." Appx353. Dropbox also identified a relevant server in Richardson, Texas in response to an interrogatory asking it to "[i]dentify every component of the Accused Product" located in Texas. Appx260; Appx353. Dropbox admitted the Richardson server "is used to store and serve customer data and provide access to Dropbox's [accused] services," which means the server is physical evidence relevant to Datanet's infringement allegations. Appx140; Appx262; Appx187 (testifying "I think the answer is yes" when asked whether the Richardson datacenter provides "the services that have been accused of infringement in this case"). Dropbox also admitted the Richardson server may store relevant documents:

> [Q.] [R]elevant documents like technical documents, sales and marketing documents, other documents that might be relevant to this lawsuit, it's possible that they're stored at the Richardson, Texas datacenter, right?

10

A. It's possible that they're stored on a server that's physically located in that datacenter, yes.

Appx188.

The Magistrate Judge found both the Oregon and Texas data centers are relevant sources of proof, and held "the datacenter in Richardson, TX is less than 115 miles from the Waco Courthouse. By contrast, it is at least 500 miles, and across state lines from the San Francisco courthouse to northwest Oregon." Appx355. Accordingly, "the datacenter in Richardson, Texas is more convenient to WDTX than the northwest Oregon datacenter to NDCA." *Id.*

*Second*, the Magistrate Judge correctly found "Dropbox could not identify any evidence that is inaccessible in or from WDTX." Appx355-356. Dropbox provided a list of ▮ employees in Texas who Dropbox admits "have access to relevant information." Appx190; Appx266. Dropbox admitted [Number] employees in Texas can remotely access source code for the accused products. Appx140, Appx251; Appx273-274 (identifying these employees). Dropbox admitted [Number] non-technical employees in Texas have "access to relevant information pertaining to damages such as marketing, revenue, profits, or cost information for the

11

accused product." Appx140; Appx190; Appx267-270. Dropbox could not identify any relevant document that is inaccessible in the Western District of Texas. Appx140; Appx208 ("[Q.] [I]s there any information you can think of that Dropbox couldn't access in the Western District of Texas that would have some relevance to this case? No, there's nothing I can think of in terms of documents.").

*Third*, the Magistrate Judge correctly held "as to creators and custodians, the Court finds Dropbox's sheer numbers argument unpersuasive" because "Dropbox has merely pointed to its total number of 800 employees in NDCA as being the custodians without any specific detail about any of those employees." Appx356-357. However, "Datanet through discovery showed, and Dropbox does not dispute, that there are ▮Number▮ current Dropbox employees in Texas who can remotely access source code for the accused products." Appx356.

Dropbox argued this factor should favor transfer because its document custodians are allegedly in Northern California, but did not identify these custodians or provide any information about them. Dropbox simply argued that its "current employees in SF—around 800 in total—are those likely to create and maintain relevant documents"

12

and "the accused technology was designed and developed at Dropbox's

headquarters." Appx316. Dropbox cited exclusively to its declaration.

*Id.* But when asked about these statements, Dropbox's declarant could

not support them:

> Q. Do you know who originally developed the technology,
> what team?
>
> A. I do not.
>
> Q. Do you know where any of the people who originally
> developed the technology reside today?
>
> A. I do not.
>
> Q. Do you know whether any of the people who originally
> developed the technology reside in Texas?
>
> A. I don't know.

Appx173. Dropbox's declarant conceded that [REDACTED: Number] Dropbox

employees in Texas have access to "the parts of the code related to the

accused technology" and "their role might be design and development of

source code." Appx174.

　　The Magistrate Judge properly rejected Dropbox's unsupported

argument that unidentified Northern California employees are "likely"

document custodians. Appx356-357. Dropbox could not carry its burden

by relying on its general presence in Northern California.  "[T]he

district court cannot rely on the mere fact that petitioners have a general presence in the [district] because *Volkswagen* commands courts to assess its eight factors considering the circumstances of the specific case at issue." *TikTok*, 85 F.4th at 359-60. "Section 1404(a)'s good-cause requirement prohibits a district court from relying on 'conclusory assertions' in considering the transfer factors." *Clarke*, 94 F.4th at 513; *see also Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022) ("the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum").

*Fourth*, the Magistrate Judge correctly found Datanet's documents in Colorado Springs are accessible in either venue, but these documents and their custodian are closer to Waco than San Francisco. Appx357. This "fails to support a finding that relative ease of access to sources of proof favors transfer to NDCA." Appx357. Dropbox did not object to this finding and the District Court did not revisit it.  Appx472 n.2.

## 2. The District Court Erred by Holding this Factor Favors of Transfer

Dropbox has never alleged (let alone provided evidence) that even a single source of proof is in California. Nevertheless, the District Court

reversed and held this factor favors transfer, erroneously concluding: (1) the Richardson, Texas datacenter should have been given no weight and (2) Dropbox's unidentified Northern California employees should have been given weight as custodians, while Dropbox's identified, relevant Texas employees should have been given no weight.

*First*, the District Court erred by giving no weight to the Richardson, Texas datacenter. The District Court stated "nothing in the record supports Datanet's assertion that the Richardson datacenter is 'an infringing physical component.'" Appx473. This is not correct. Dropbox identified the Richardson datacenter in response to an interrogatory asking it to "[i]dentify every component of the Accused Product" in Texas. Appx260. Dropbox admitted the Richardson datacenter "is used to store and serve customer data and provide access to Dropbox's services" and testified "I think the answer is yes" when asked whether the Richardson datacenter provides "the services that have been accused of infringement in this case." Appx187; Appx262. Additionally, "documents for trial may be stored at that datacenter." Appx353. The District Court did not address the relevance of the Richardson datacenter as a source of documents.

The District Court then held "even assuming it were [relevant], the Texas-based datacenter is not a unique piece of evidence located only in Texas" referencing the fact that Dropbox has other datacenters. Appx473. Whether the Richardson datacenter is "unique" is immaterial because Dropbox has not alleged any similar datacenter is located in or near Northern California. The Richardson datacenter is a relevant source of proof that is relatively more accessible in Western Texas, with no equivalent source of proof in or near Northern California. *TikTok*, 85 F.4th at 358 ("The question is *relative* ease of access, not *absolute* ease of access.").

*Second*, the District Court erred by holding document custodians favored transfer because "Dropbox sufficiently demonstrated relevancy" as to its unidentified Northern California employees. Appx474. The District Court quoted five pieces of "evidence," but none of these quotes are actually evidence. *Id.* Each of the five quotes is an attorney argument from Dropbox's briefing.

The first quote is from Dropbox's reply brief (Appx437) and just says Dropbox has 300 engineers in California; it does not say whether

16

these engineers work on the accused products or whether they are document custodians.

The second quote is from the same page of the same brief, and states that Dropbox's Northern California employees "include[] Dropbox's senior management team" but does not say who they are, whether they are document custodians, or what documents they allegedly have custody of.

The third quote is from Dropbox's opening brief (Appx406) and says the "primary … decisions" related to the accused product are made in Northern California, but again fails to provide any evidentiary support for this claim and fails to address document custodians.

The fourth quote is from the same brief (Appx411) and claims a "majority" of the thirty-five members of the "File Sync sub-team" are in Northern California. Dropbox has never shown that these people are document custodians and has never identified even one of these people. When asked about the File Sync sub-team, Dropbox could not identify any evidence of its relevance. Appx179 (the File Sync sub-team is "one of the teams that the legal team, in consultation with some unnamed people, decided was one of the relevant teams"); Appx180 (asked

whether Dropbox has "any kind of documents or other forms of evidence
that would substantiate" the relevance of the File Sync sub-team,
answering "I'm not aware of any specific documents"); Appx181 ("Q. You
don't know who those individuals were [who determined the File Sync
sub-team is relevant] or what was said by them, correct? A. That's
correct.").

The final quote is also from the same brief, where Dropbox argued
its Northern California employees "are those likely to create and
maintain relevant documents." Appx406. This statement—carefully
hedged by the word "likely"—does not even say that Northern
California employees *actually* create or maintain documents, only that
they might or could. It does not say who these employees are, how many
there are, what kinds of documents they maintain, or why those
documents are relevant. It is attorney argument accepted uncritically
as fact.

The District Court clearly erred by crediting unsubstantiated
attorney argument about the location of alleged document custodians.
*Def. Distributed*, 30 F.4th at 434 ("the movant has the burden to
establish good cause, which requires an actual showing of the existence

of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum … the district court erred by uncritically accepting the [movant's] conclusory assertions").

This is especially true in the context of document custodians, whose location is only relevant to the extent it "may bear on the ease of retrieval" of documents. *Google*, 2021 U.S. App. LEXIS 33789, at *7. Dropbox submitted no evidence that documents can be more easily retrieved in Northern California and conceded that every relevant document can be retrieved in Western Texas. Appx208.

The District Court also erred by discounting Dropbox's Number relevant Texas employees as document custodians, again quoting two attorney arguments as though they were evidence. Appx475.

First, the District Court relied on Dropbox's attorneys' statement "the *vast majority* of these [Texas] employees do not have decision making authority." *Id.* But the question is whether they are document custodians, not whether they have decision making authority. Dropbox used the term "decision making authority" narrowly to refer only to the highest levels of senior management. *See* Appx162 ("I'm referring to decision-making authority here as very high level decision-making").

CONFIDENTIAL MATERIAL REDACTED

Further, Dropbox's statement implicitly concedes that some of the identified Texas Dropbox employees **do** have decision making authority, even if the "majority" allegedly do not. To the extent "decision making authority" has any relevance to document custodians, Dropbox concedes it **does** have Texas employees who have this authority (including D. ▓Name▓ and D. ▓Name▓, discussed below), who should have been weighed against transfer. Dropbox identified zero California custodians with decision making authority.

Second, the District Court credited Dropbox's attorney argument that its Texas personnel were not employed "during the *creation* or *implementation* of engineering, design, development, or source code for the Accused Product, which occurred before 2018." Appx475. Whether someone was employed by Dropbox before 2018 has no bearing on whether they are document custodians **today**. Moreover, Dropbox's declarant did not know who "originally developed" the accused product, where they are located, or whether any such people reside in Texas. Appx173 ("Q. Did Dropbox try to investigate where any of the people who developed the technology live today? A. I'm not aware."). Dropbox admits it does not know who these people are or where any of them

live—there is no evidence they are in Northern California. The District Court imposed a double standard by discounting named Texas custodians while giving weight to unidentified California custodians, even though there is no evidence any of these people were employed "during the creation or implementation" of the accused product.

Even if the District Court had been deciding this factor *de novo*, weighing this factor against transfer would have been an abuse of discretion because the District Court relied on attorney arguments that were not supported, and often contradicted, by Dropbox's admissions. But the District Court was not deciding this factor *de novo*. The Court was required to defer to the Magistrate Judge's fact findings unless "clearly erroneous." *Moore*, 755 F.3d at 806. Because the Magistrate Judge's findings were well supported, it was error to overturn those findings even if the District Court also had a "permissible" view of the evidence. *Harris*, 740 F.3d at 967; *Wright*, 777 F.3d at 773 ("A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole").

## B. The Availability of Compulsory Process

"This factor favors transfer where non-party witnesses are outside the Western District's subpoena power and a proper venue that does enjoy absolute subpoena power for both depositions and trial is available." *TikTok*, 85 F.4th at 360. This factor disfavors transfer where the movant fails to "identif[y] any witness who is subject to compulsory process in [California] but not in Texas." *Def. Distributed*, 30 F.4th at 434.

### 1. The Magistrate Judge Correctly Weighed this Factor Against Transfer

The Magistrate Judge correctly weighed this factor against transfer, finding: (1) "Dropbox fails to identify any third-party witnesses," (2) there are "[Number] former employees in Texas who are potentially relevant," (3) "Datanet's identification of specific former employees [in] Texas with leading roles at the company, [M.] [Name] and [A.] [Name], is highly probative," and (4) other third party witnesses reside outside both venues' subpoena power and are neutral. Appx357-360.

*First*, the Magistrate Judge properly discounted Dropbox's argument that "the sheer size of its corporate footprint in NDCA" means there "would be" more relevant former employees in NDCA. Appx358.

22

Dropbox has never named or identified **even one person** who is

relevant and subject to NDCA's subpoena power:

> Q. Can Dropbox name any witness who's going to require a
> subpoena in order to attend trial in this case?
>
> A. I'm not sure.
>
> Q. Can Dropbox identify anyone who would be an unwilling
> witness in this case?
>
> A. I don't know the answer to that.

Appx207. The Magistrate Judge held Dropbox's vague gesture toward

unidentified former employees was not sufficient to carry its burden.

Appx358. Dropbox failed to "tie those individuals to this case, or show

that they do any work related to the [accused] functionality or its

implementation, or support the proposition that any of them would

have physical proof relevant to the adjudication of [plaintiff's] claims."

*TikTok*, 85 F.4th at 360.

*Second*, the Magistrate Judge correctly found Datanet had

identified "Number former employees in Texas who are potentially relevant"

including Number who were members of relevant teams, reside within 100

miles of Waco, and were employed by Dropbox in the six years

preceding the complaint. Appx358; Appx138-139. Unlike Dropbox's

23

unidentified California people, Datanet identified each of these Texas people by name, zip code, job title, and team assignment. Appx148-151; Appx282-289 (complete list). Datanet also showed these people are relevant. For example, at least [Number] of these former Texas employees were members of the "Sales and Channel Team" that sells the accused products, at least [Number] were members of the "Platform" team, which Dropbox alleges is the team "most relevant to the issues in this case," and at least [Number] had access to accused product source code. Appx139; Appx148-151; Appx194; Appx259; Appx292.

Nevertheless, the Magistrate Judge conservatively held "[t]he voluminous lists of witnesses offered by the parties basically cancel each other out." Appx359. Even though Dropbox bore the burden of proof and "Dropbox fail[ed] to name any of the individuals specifically or identify their individual roles, but Datanet did provide that information" the Magistrate Judge still gave Dropbox the benefit of the doubt by "assign[ing] the same amount of weight to each of these voluminous lists." Appx360.

*Third*, the Magistrate Judge found "Datanet's identification of specific former employees [in] Texas with leading roles at the company,

24

[M.] █Name█, and [A.] █Name█, is highly probative … These two former employees in WDTX appear necessary to the case and do not have any equivalents in NDCA." Appx359. This finding was well supported by Dropbox's admissions. Appx197 ("Q. So it's fair to say [M.] █Name█ had a leadership senior role at Dropbox and sold accused products as part of her job? A. That's fair to say."); Appx202 (█Name█ would have "damages information related to the accused products" and information about "customers that purchase Dropbox, which contains the accused technology"). The Court found this "evidence severely undercuts Dropbox's claim that" this factor favors transfer. Appx359.

*Fourth*, the Magistrate Judge held the inventors of the asserted patents "reside outside the subpoena power of both the WDTX and NDCA" and are neutral. Appx360. Dropbox did not object to this finding and the District Court did not revisit it.

### 2. The District Court Erred by Re-Weighing this Factor in Favor of Transfer

Even though Dropbox never identified a single allegedly relevant witness subject to compulsory process in Northern California, the District Court nevertheless reversed and held this factor favors

transfer. The District Court improperly credited Dropbox's unsupported arguments and discounted Datanet's evidence.

*First*, the District Court erred by finding this factor favors transfer because Dropbox has a greater number of relevant former employees in Northern California. This finding was not even based on attorney argument, let alone evidence, because Dropbox has never said how many relevant former employees it alleges are in Northern California.

Instead, this finding was based on Dropbox's supplemental declaration attached to its Reply brief[1] in which it merely listed its **total** number of former employees in NDCA: "More than 2,400 former Dropbox employees worked and/or resided in or around the San Francisco area according to their last known address, where more than 1,750 of those former Dropbox employees had engineering, sales, or marketing roles related to the accused technology." Appx347. Dropbox declined to identify even one of these people, saying it is "not practical

---

[1] This argument was waived because it was raised for the first time in Dropbox's reply brief and was not disclosed during venue discovery, so Datanet did not have an opportunity to cross examine Dropbox's declarant about it. *Celorio Garrido v. Holt*, 547 F. App'x 974, 980 (Fed. Cir. 2013) ("arguments made for the first time in a reply brief are waived"); *Skinner v. Reed*, 544 F. App'x 398, 400 (5th Cir. 2013).

26

or necessary" to do so. Appx318. Dropbox also took the position that these people are not relevant: "the mere number of former employees in an area is irrelevant." *Id.*

The District Court noted that "vague assertions" about unidentified witnesses are entitled to less weight than "specifically identified witnesses" and cited a case in which the court gave no weight to "hundreds of potential nonparty healthcare providers who had received the accused products … but whose relevance is not clear." Appx478 (cleaned up). Nevertheless, the Court distinguished this case by concluding Dropbox "expressed the relevance of its witnesses by indicating that the File Sync sub-team is likely to have relevant technical knowledge and was located in the San Francisco area." Appx478.

This statement does not support the conclusion that Dropbox has more relevant witnesses in Northern California. Dropbox has never said how many former members of the File Sync sub-team reside in Northern California and has not identified any of them. Dropbox only says "[a]ny such former employees would have worked in or were known

27

CONFIDENTIAL MATERIAL REDACTED

to reside near San Francisco" without indicating how many or why they are relevant. Appx35.

The District Court also credited Dropbox's statement "the accused technology was designed and developed at Dropbox's headquarters." Appx479. This cannot support the District Court's conclusion about the relative number of non-party witnesses, because Dropbox testified it does not know who originally developed the accused technology and it did not "investigate where any of the people who developed the technology live today." Appx173. Dropbox has never made any allegations, or presented any evidence, about how many former employees in Northern California (if any) originally developed the accused technology.

*Second*, the District Court erred by discounting the relevant former Dropbox employees in Texas, stating "Datanet provided little explanation for its conclusory assertion that these former employees 'have relevant knowledge.'" Appx478. This is not correct. For example, Datanet specifically identified ▮ former members of the "Platform" team who reside within 100 miles of Waco. Appx139; Appx151. Dropbox admitted the Platform team is one of "the teams and sub-teams most

relevant to the issues in this case." Appx259. Yet the District Court

disregarded Dropbox's admission because "Dropbox avers that the most

relevant team is the File Sync sub-team." Appx478. Even if it were true

that the File Sync sub-team is the "most relevant" team (Dropbox has

no evidence of this), Dropbox conceded the Platform team is also

relevant. Appx259. Moreover, Dropbox has not identified a single

former member of the File Sync sub-team, whereas Datanet identified

[Number] former Platform team members in Texas.

    The District Court also discounted Datanet's evidence that [Number]

former Dropbox employees within 100 miles of Waco had access to

accused product source code and that [Number] were former members of the

"Sales and Channel Team" that sold the accused products. Appx478.

The District Court did not comment on these people or explain why it

ignored this evidence. Datanet identified these people individually.

Appx148-151; Appx282-289. Dropbox presented no evidence or

argument rebutting the relevance of these witnesses. Appx318.

    *Third*, the District Court erroneously discounted senior former

Dropbox employees M. [Name] and A. [Name] because "no evidence

or suggestions" support their relevance. Appx479. This is incorrect.

CONFIDENTIAL MATERIAL REDACTED

Dropbox admitted under oath that these people have relevant

knowledge. Appx197; Appx202. The District Court also stated that

these "purported relevant former employees, although specifically

identified, do not have unique knowledge." Appx479. The District Court

did not cite anything in support of this conclusion, and there is no

evidence that would support it. Dropbox made no attempt to argue that

[Name] and [Name] are not relevant or that they lack "unique"

knowledge. In fact, Dropbox never mentioned [Name] or [Name] *at*

*all* in its briefing. *See* Appx317-318; Appx400; Appx411; Appx439.

It was an abuse of discretion to weigh this factor in favor of transfer

given that Dropbox has not identified even one relevant third-party

witness in Northern California, whereas Datanet specifically identified

many in Western Texas and substantiated their relevance with

Dropbox's admissions. *Def. Distributed*, 30 F.4th at 434 (reversing

where the movant never "identified any witness who is subject to

compulsory process in New Jersey but not in Texas. Yet the court

inexplicably weighed this factor not as neutral but in favor of

transfer."). Even if this had been a situation where reasonable minds

could differ, the District Court was required to defer to the Magistrate

Judge's factfinding. The District Court's disagreement with the Magistrate Judge's weighing of the facts is not sufficient under Rule 72(a)'s "clear error" standard.

### C. The Cost of Attendance for Willing Witnesses

"We begin by determining whether the transferee venue is more than one hundred miles from the transferor. Where that is so, the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Clarke*, 94 F.4th at 514.

### 1. The Magistrate Judge Correctly Weighed this Factor Against Transfer

The Magistrate Judge correctly weighted this factor against transfer, finding: (1) Datanet's party witness weighs against transfer; (2) "the alleged Dropbox employees in NDCA" favor transfer, even though "Dropbox fails to provide the names of any potential witnesses in NDCA, besides its venue declarant"; and (3) Datanet identified ▮ relevant witnesses in Texas who weigh strongly against transfer. Appx360-364.

*First*, the Magistrate Judge correctly weighed Datanet's witness, the inventor Warren Roach, against transfer. Appx361-363. Mr. Roach lives in Colorado Springs, about 650 miles from Waco and about 950 miles

from San Francisco; Mr. Roach stated in his declaration that Waco is
more convenient and provided evidence that travelling to Waco would
be less expensive. Appx152-153. Because inconvenience "positively and
linearly scales" with distance, weighing Mr. Roach against transfer was
the only correct conclusion. *See TikTok*, 85 F.4th at 361 (witnesses in
China favored transfer to California because China is closer to
California).

*Second*, the Magistrate Judge noted "[a]fter months of venue
discovery and full briefing on the issue of venue, the only employee in
NDCA that Dropbox has named specifically is its venue declarant" and
"Dropbox was unable to identify anyone in NDCA who would be a
relevant witness." Appx363; *see also* Appx183 ("Q. And when you say,
'the relevant employees,' do you know the names of those people? A. … I
don't have the names of those individuals.").

The Magistrate Judge also acknowledged Dropbox's offer to provide
names "upon request" of the "File Sync sub-team of Dropbox's Product
Platform team, of which there are 35 employees in total, and a
'majority,' primarily work or reside in or around San Francisco," but
held that offering to provide names "upon request" is "inconsistent with

32

Dropbox's burden of proof under *Volkswagen II* and obligation to come forward with evidence." Appx362-363. Nevertheless, the Magistrate Judge gave Dropbox the benefit of the doubt and held that the unnamed "alleged Dropbox employees in NDCA … favor transfer." Appx363.

*Third*, the Magistrate Judge correctly found that Datanet identified [Number] relevant Dropbox witnesses in Texas including "software engineers on the 'Platform' team, and 'Dropbox Core' team whose responsibilities include 'the Dropbox for Teams file sync and storage product'—an accused product." Appx362-363; *see also* Appx136-137. Dropbox admitted that each of these [Number] Texas employees have relevant information: "[Q.] So [Appx266-270] is a list of the people who have access to relevant information basically? A. Yes." Appx190; Appx266-270. Dropbox admitted [Number] are engineers who access accused product source code. Appx251; Appx273-274. Dropbox admits the remaining [Number] non-technical employees in Texas have "access to relevant information pertaining to damages." Appx140; Appx190; Appx267-270.

The Magistrate Judge correctly concluded this factor disfavors transfer. Appx364. Even if Dropbox had thirty-five File Sync sub-team

33

members in Northern California (it has not alleged or shown this),[2]
these still cannot outweigh the ██ relevant Dropbox witnesses and
Warren Roach, for whom Western Texas is more convenient.

### 2. The District Court Erred by Re-Weighing this Factor in Favor of Transfer

The District Court erred by reversing and holding this "factor clearly
favors transfer," discounting the ██ Texas witnesses Datanet
specifically identified and giving unjustified weight to Dropbox's
unidentified California witnesses. Appx480-483

*First*, the District Court stated "Waren Roach's cost of attendance
neither favors nor disfavors transfer" because flight costs between the
two venues are comparable. Appx481. This was error because Colorado
Springs is undisputedly several hundred miles closer to Waco than San
Francisco (inconvenience scales linearly with distance), and Mr. Roach
showed his lodging costs would be lower in Waco. Appx153.

---

[2] Even Dropbox does not allege it has thirty-five relevant witnesses in
California. Dropbox says there are "***approximately*** 35 individuals on
the File Sync sub-team, the ***majority*** of whom primarily work or reside
in or around San Francisco." Appx34 (emphasis added). Dropbox has
never said how many are actually in Northern California.

34

CONFIDENTIAL MATERIAL REDACTED

*Second*, the District Court stated the "Magistrate Judge relied upon Dropbox's lack of naming individual employees to determine that this factor disfavored transfer." Appx481. This is incorrect. As the District Court's Order later acknowledges, the Magistrate Judge gave Dropbox the benefit of the doubt and "credited Dropbox's claim that … the File Sync sub-team is the most relevant sub-team, and that the majority of the team is based in NDCA." Appx482. The Magistrate Judge weighed Dropbox's NDCA witnesses in favor of transfer, even though Dropbox never identified any NDCA witness other than Byron Hill, never identified any member of the File Sync sub-team, and never said how many of the team's members allegedly live in NDCA (a "majority" could be as few as eighteen). Appx363. Even if all thirty-five were in NDCA, the Magistrate Judge was still correct that WDTX is the more convenient venue for the larger number of willing witnesses.

*Third,* the District Court concluded the Magistrate Judge had "overlooked" Dropbox's "clarifications" on "relevancy as it relates to its list of ▮ WDTX Dropbox employees." Appx482. The District Court first credited Dropbox's interrogatory response stating the "vast majority" of Dropbox's Texas employees "do not have decision-making authority."

Appx482 (citing Appx245). The very next sentence of the response

admits "one Texas-based employee, D. █ Name █ Head of Channel Sales,

*has decision-making responsibility* with respect to channel sales."

Appx245 (emphasis added). Dropbox also admitted that D. █ Name █

who lives in Austin, Texas, was "the leader at Dropbox of sales and

marketing for the accused products" when the case was filed. Appx185.

Dropbox has never identified even a single person in California with

decision-making authority.

Moreover, "decision-making authority" is not the test for witness

relevance under this factor. No case holds it is proper to discount

willing witnesses who lack "decision-making authority." The decision

makers at the top of a company are not necessarily the most

knowledgeable witnesses, as Dropbox admitted: "it's difficult to answer

if a person at the top with decision-making authority is always the most

knowledgeable about a particular topic." Appx163. It was error to

discount Dropbox's Texas witnesses based on an alleged lack of

"decision-making authority," particularly where Dropbox identified zero

people in California with this authority.

CONFIDENTIAL MATERIAL REDACTED

The District Court also credited Dropbox's allegation that "decision-making authority concerning … marketing, revenue, profits, or cost … resides with employees" in Northern California. Appx482. Dropbox has never identified any of these employees or provided any information about them, and has never said how many are allegedly located in NDCA. Texas-based D. **Name** was undisputedly the leader of sales and marketing for the accused products. Appx185. Moreover, "decision-making authority" is not the test for relevance.

The District Court next cited Dropbox's argument that none of its **Number** relevant software engineers in Texas are assigned to the "teams that appear most relevant to the issues in the case." Appx482. That is incorrect. Datanet showed, and the Magistrate Judge found, that **Number** of these software engineers are on the "Platform" team, and **Number** are on the "Dropbox Core" team. Appx136; Appx363. Dropbox admitted the "Platform" team is among "the teams and sub-teams most relevant to the issues in this case." Appx259. Dropbox stated members of the "Dropbox Core" team are "responsible for the main Dropbox.com user experience" and "responsible for the [accused] Dropbox for Teams file sync and storage product." Appx277.

The District Court also cited Dropbox's statement that none of the Texas engineers were employed "during the creation or implementation" of the accused product. Appx482. Dropbox admits it does not know who was involved in the creation and implementation of the accused product and did not investigate where any of those people live. Appx173. There was no basis to conclude these people are in NDCA. Dropbox's failure to investigate cannot possibly carry its elevated burden of proof.

The District Court was required to credit the Magistrate Judge's "permissible" findings of fact. *Harris*, 740 F.3d at 967. Even if the District Court's contrary findings had also been "permissible," Rule 72(a) requires deferential review.

### D. Local Interest

This factor looks "not to the parties' significant connections to each forum but rather the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364 (cleaned up). "We focus on the *events*—not the *parties*." *Clarke*, 94 F.4th at 511.

### 1. The Magistrate Judge Correctly Weighed this Factor Against Transfer

The Magistrate Judge weighed this factor against transfer and correctly found that "Dropbox failed to submit sufficient information to conclude that more relevant design and development activities took place in NDCA than WDTX." Appx366. The Magistrate Judge noted that Dropbox's declarant did not know when the technology was developed, where it was developed, who developed it, or where any of those people live today. *Id.* (citing Appx173). "This significant discrepancy between the written declaration and the sworn testimony raises serious credibility issues, and as such is given little weight as it could demonstrate either a lack of research to support the claims in the venue motion or a deliberate attempt to manipulate venue." Appx366.

### 2. The District Court Erred by Re-Weighing this Factor in Favor of Transfer

The Magistrate Judge's conclusion on this factor was entitled to especially great deference because it was based on a credibility determination. *Tokio*, 235 F.3d at 970 ("Findings based on the credibility of witnesses demand even greater deference"); *Rollings*, 451

F. App'x at 349 (a finding based on credibility "if not internally inconsistent, can virtually never be clear error").

Nevertheless, the District Court erred and reversed. *First*, the District Court disregarded the Magistrate Judge's finding that the evidence "strongly indicated that relevant design and development activities are ongoing in WDTX." Appx484. The District Court reasoned that such ongoing design and development is irrelevant because the inquiry focuses on "the events that gave rise to a suit." *Id.* But ongoing design and development are part of the events that give rise to the suit. Datanet accuses Dropbox's *current* file storage product of infringement, which is being continually updated through the design and development activities of its Texas engineers. These activities in Texas are part of the events that give rise to Datanet's claims. To the extent the District Court believed that only the "original" design and development is relevant, Dropbox said it does not know who participated in this or where it took place. Appx173.

*Second*, the District Court stated "NDCA has the greater relevant factual connection to this matter, and citizens of NDCA have a greater stake in the litigation." Appx484. In support of this statement, the

40

District Court inexplicably cited three pieces of evidence, none of which support the Court's conclusion. *Id.* The first piece of cited evidence is page 6 of Datanet's reply brief (Appx139), in which Datanet identifies hundreds of relevant former Dropbox employees in Texas. The second and third pieces of evidence are from Dropbox's deposition:

> Q. Do you know how the Dropbox legal team decided which people to list in Exhibit 5 [Appx266-270]?
>
> A. Yes, at a high level, my understanding is from the HR records, determining which employees were based in Texas and then reviewing based on title, the individuals who may have any relevant information about the accused technology.
> …
> Q. You can -- let me -- so is it Exhibit 5 that we're looking at here, is that a complete list of every Dropbox employee in Texas who has knowledge related to the accused products or is there anyone who wasn't included who would have knowledge?
>
> A. No, my understanding is that Exhibit 5 is a list, is a complete list of employees in Texas that are relevant for the -- for the accused technology and based on the teams that the investigation identified as teams that may have relevant knowledge.

Appx171. This testimony directly contradicts the District Court's finding. Here, Dropbox admits that the ██ Texas Dropbox employees listed in Exhibit 5 (Appx266-270) are "relevant for the accused technology" and members of the "teams that may have relevant

knowledge." This testimony shows that Western Texas, not Northern California, is the locus of relevant events.

### E. The Remaining Four Factors Do Not Favor Transfer

The Magistrate Judge found the remaining four of the eight *Volkswagen* factors are neutral. Appx364-365; Appx367. Dropbox did not object to the Magistrate Judge's findings on these four factors. Appx399-400. The District Court agreed that these four factors are neutral. Appx483-485. It is therefore undisputed that these four factors do not weigh in favor of transfer to the Northern District of California. *Clarke*, 94 F.4th at 509 ("Where there is no demonstration by the movant, let alone a clear one, the district court cannot weigh a factor against the non-movant and in favor of transfer.") (cleaned up).

### CONCLUSION

The extraordinary writ of mandamus is warranted by Dropbox's extraordinary failure of proof. The Court should grant the petition, vacate the District Court's order, and remand with instructions to transfer the case back to the Western District of Texas.

Respectfully submitted,

/s/ Alden G. Harris

ALDEN G. HARRIS

HEIM, PAYNE & CHORUSH LLP

609 Main Street, Suite 3200

Houston, Texas 77002

(713) 221-2000

aharris@hpcllp.com

*Counsel for Petitioner*

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF SERVICE

**Case Number** _____

**Short Case Caption** In re: DATANET LLC _____

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on __07/02/2024__

by  ☑  U.S. Mail  ☐  Hand Delivery  ☐ Email  ☐ Facsimile
    ☐  Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| U.S. District Judge Orlando L. Garcia | 262 West Nueva Street, San Antonio, TX 78207 |
| U.S. Magistrate Judge Derek T. Gilliland | 800 Franklin Avenue, Waco, TX 76701 |
| District Judge Araceli Martínez-Olguín | United States District Court, Office of the Clerk 450 Golden Gate Ave, 16th Floor, San Francisco, CA 94102 |
| Robert C. Bertin | MORGAN, LEWIS & BOCKIUS LLP 1111 Pennsylvania Avenue, NW Washington, D.C. 20004 |
| Michael J. Lyons | Morgan, Lewis & Bockius LLP 1400 Page Mill Road Palo Alto, CA 94304 |

☐    Additional pages attached.

Date: __07/03/2024__

Signature:  /s/ Alden G. Harris

Name:  Alden G. Harris

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** _____

**Short Case Caption** In re: DATANET LLC _____

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  07/02/2024

by  ☑  U.S. Mail    ☐  Hand Delivery    ☐ Email    ☐ Facsimile
    ☐  Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Karon F. Fowler | MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, Illinois 60606 |
| Nicholas A. Restauri | MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, Illinois 60606 |
|  |  |
|  |  |
|  |  |

☐    Additional pages attached.

Date: 07/03/2024

Signature:  /s/ Alden G. Harris

Name:  Alden G. Harris

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** _____

**Short Case Caption:** <u>In re: DATANET LLC</u> _____

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>7,789</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>07/03/2024</u>

Signature: <u>/s/ Alden G. Harris</u>

Name: <u>Alden G. Harris</u>

Save for Filing

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** _____

**Short Case Caption:** In re: DATANET LLC _____

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains ___15___ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: _07/03/2024_

Signature: _/s/Alden G. Harris_

Name: _Alden G. Harris_