No. 2024-137

# United States Court of Appeals for the Federal Circuit

IN RE: DATANET LLC,

*Petitioner*.

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in Case No. 22-cv-1142, the Honorable Judge Orlando L. Garcia

## NONCONFIDENTIAL RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
T. 215.963.5000
F. 215.963.5001
julie.goldemberg@morganlewis.com

Nicholas A. Restauri
Karon N. Fowler
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
T. 312.324.1000
F. 312.324.1001
nicholas.restauri@morganlewis.com
karon.fowler@morganlewis.com

Michael J. Lyons
Austin L. Zuck
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
T. 650.843.4000
F. 650.843.4001
michael.lyons@morganlewis.com
austin.zuck@morganlewis.com

*Counsel for Respondent*
*Dropbox, Inc.*

# CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-137 |
| **Short Case Caption** | *In re: Datanet LLC* |
| **Filing Party/Entity** | Respondent / Dropbox, Inc. |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Dated: July 12, 2024

*/s/ Julie S. Goldemberg*
Julie S. Goldemberg
*Counsel for Respondent*
*Dropbox, Inc.*

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☒ None/Not Applicable |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable

| | | |
|---|---|---|
| Robert C. Bertin | Elizabeth M. Chiaviello | Katerina Hora Jacobson |
| Kevin J. Spinella | | |

i

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☒  None/Not Applicable

---

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒  None/Not Applicable

# TABLE OF CONTENTS

**Page**

Certificate of Interest ...................................................................................i

Statement Regarding Confidential Material ............................................iv

Table of Authorities ....................................................................................v

Introduction .................................................................................................1

Statement of Facts .......................................................................................2

Standard of Review......................................................................................4

Statement of Reasons Why The Writ Should Not Issue..........................5

I.     The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in analyzing the ease of sources of proof factor. .................................................................5

     A.     The sources of proof are primarily in NDCA. ..................6

     B.     The Magistrate Judge clearly erred when weighing the sources of proof factor......................................................9

     C.     Datanet's additional arguments do not show a clear and indisputable legal right to the relief it seeks. ..................10

II.     The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in analyzing the compulsory process factor. ...........................................................................13

     A.     The compulsory process factor favors transfer. ..............13

     B.     Datanet's remaining arguments show no clear abuse of discretion to warrant mandamus relief............................17

III.     The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in weighing the willing witnesses factor...........................................................................19

     A.     The willing witness factor favors transfer.......................19

     B.     The Magistrate Judge clearly erred in weighing the willing witness factor.................................................................20

IV.     The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in weighing the local interest factor. ...................................................................................24

# TABLE OF CONTENTS
### (continued)

**Page**

A.    NDCA has a significant local interest, while WDTX does not. ......24

B.    The Magistrate Judge clearly erred when weighing the local interests..............................................................................................26

C.    Datanet's "credibility" argument does not show that the District Court erred........................................................................26

Conclusion .............................................................................................29

Certificate of Compliance ......................................................................30

Certificate of Confidential Material........................................................31

## STATEMENT REGARDING CONFIDENTIAL MATERIAL

The material redacted from this brief is subject to a protective order. The confidential information on pages 15, 22, and 24, relates to business information and employee information, which have been designated as confidential.

iv

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ..................................................................4

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc*.,
942 F.3d 1119 (Fed. Cir. 2019) ..........................................18

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) ..............................................18

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) .................................6, 12, 16

*Honeywell Int'l Inc. v. Zebra Techs. Corp.*,
No. 6:21-CV-1010-ADA, 2022 WL 2161058 (W.D. Tex. June 15, 2022)..........6

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) ..........................................16

*In re Apple Inc*.,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .........6, 7

*In re Clarke*,
94 F.4th at 511 ....................................................................26

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ............14

*In re Genentech, Inc*.,
566 F.3d 1338 (Fed. Cir. 2009) ..........................................22

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) .....................................18, 19

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ..............13

v

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ........................6, 21

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ...................................................25, 26

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ...........................................14, 15, 22

*In re Hulu, LLC*,
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) .............................10

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ....................................................4, 6, 17

*In re Juniper Networks, Inc.*,
No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ...............................8

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022)..............................10

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) ..........................................................20

*In re Pandora Media, LLC*,
No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ...................9, 21, 22

*In re Planned Parenthood Fed. Am.*,
52 F.4th 625 (5th Cir. 2022) ..............................................................4

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ..............................................................12

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014) ...........................................................13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...........................................................4, 6

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010) ..........................................................................26

*Phoji, Inc. v. Atlassian, Inc.*,
    No. 6:21-CV-00888-ADA, 2022 WL 2392876 (W.D. Tex. July 1, 2022) ....6, 23

*U.S. v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948)............................................................................................4

**STATUTES**

28 U.S.C. § 636........................................................................................................4

28 U.S.C. § 1404......................................................................................................4

**RULES**

Fed. R. Civ. P. 72 ....................................................................................................4

## INTRODUCTION

This case should never have been filed in the Western District of Texas. The case's center of gravity is in the Northern District of California, where Defendant/Respondent Dropbox LLC is headquartered and where Dropbox employees designed and developed the accused products. NDCA is also home to the marketing, financial, engineering, and design teams responsible for the management of the accused products. And NDCA is home to the vast m ajority of the evidence relevant to the parties' dispute. Plaintiff/Petitioner Datanet LLC is a Nevada limited liability company with its principal place of business in Colorado Springs, Colorado and with no connection to WDTX.

Although the Magistrate Judge initially denied the Motion to Transfer, the District Court found clear error in the Magistrate Judge's analysis of the transfer factors and transferred the case to NDCA.

While Datanet may disagree with the District Court's reasoning, it has not shown the District Court clearly abused its discretion. There is nothing patently erroneous in the District Court's opinion to warrant the extraordinary remedy of mandamus relief, and Datanet has not shown a clear and indisputable legal right to keep its case in WDTX.

This Court should deny the Petition.

## STATEMENT OF FACTS

Datanet filed a patent infringement action against Dropbox in the WDTX, Waco Division, on October 31, 2022.  Appx401.

Datanet has no connection to the venue.  Datanet is a Nevada LLC with its registered agent, Warren Roach (who is also a named inventor of the Asserted Patents), located in Colorado Springs, Colorado.  Appx402.  There is no evidence that the other named inventors are in Texas.  Appx402.

Dropbox is headquartered in San Francisco, California, which is where over 800 Dropbox employees including over 300 software engineers work.  Appx401.  According to their last known addresses, more than 1,600 former Dropbox employees that had engineering, sales, or marketing roles related to the accused products reside in San Francisco.  *Id.*  San Francisco is also the primary site for Dropbox's engineering, development, product design, sales, and marketing operations.  *Id.*  Dropbox's senior management team is located there, and it is where Dropbox makes its most significant engineering, marketing, and pricing decisions. *Id.*

Dropbox's File Sync sub-team designed and developed the accused technology in San Francisco.  *Id.*  The File Sync sub-team has approximately 35 members—the majority of whom primarily work or reside in or around San Francisco.  *Id.*

2

Dropbox has three offices in the United States, none of which are in the WDTX. Appx402. Although Dropbox previously had an office in Austin, that office closed on May 5, 2023. *Id.* Now, approximately 160 Dropbox employees work remotely in or around the Austin area, but many of them work in human resources, customer assistance, and sales and therefore are not likely to have information relevant to this case. *Id.* Of the approximately 25 engineers or programmers who work remotely in the Austin area, none have decision-making responsibilities for the accused products. *Id.* And none are part of the relevant File Sync sub-team. *Id.*

Based on the lack of connection to WDTX and the NDCA's substantial local interest in this case, Dropbox filed a motion to transfer to the NDCA on May 10, 2023. Appx403. On August 15, 2023, Judge Orlando Garcia of the WDTX referred the case to U.S. Magistrate Judge Gilliland for disposition of all pretrial matters. *Id.* The Magistrate Judge denied Dropbox's motion to transfer, and Dropbox timely filed objections to the Magistrate Judge's order on November 1, 2023. Appx421.

On March 28, 2024, the District Court held "that the Magistrate Judge clearly erred in denying Dropbox's motion to transfer." Appx485. As such, the District Court sustained Dropbox's objections and ordered the case to be transferred to the NDCA. *Id.*

The underlying case in NDCA is currently stayed pending resolution of Dropbox's petitions for *inter partes* review of each of the Asserted Patents. Appx486.

## STANDARD OF REVIEW

The legal standard for mandamus is demanding.  Datanet must show that it has a clear and indisputable legal right to the relief it seeks.  *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).  This Court applies regional circuit law when reviewing transfer decisions under § 1404(a).  *In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021).  Transfer decisions in cases arising on mandamus from district courts in the Fifth Circuit are reviewed only for "clear abuses of discretion that produce patently erroneous results."  *In re Planned Parenthood Fed. Am.*, 52 F.4th 625 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc)).

A district court judge must "modify or set aside" any part of a magistrate judge's non-dispositive order "that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

4

### STATEMENT OF REASONS WHY THE WRIT SHOULD NOT ISSUE

There is no dispute that this case could have been brought in NDCA, so the only issue before this Court is whether the District Court clearly abused its discretion and produced patently erroneous results in setting aside the Magistrate Judge's order. It did not, as the District Court correctly found that the Magistrate Judge clearly erred in weighing four of the eight transfer factors that Datanet focuses on in its Petition: (1) the relative ease of access to sources of proof (Appx476); (2) the availability of compulsory process to secure the attendance of witnesses (Appx480); (3) the cost of attendance for willing witnesses (Appx483); and (4) the local interests (Appx485). The District Court's reasoning as to these four factors is well-grounded in the record and the law, and all four factors support transfer. Neither party has challenged the Magistrate Judge's finding that the remaining four factors are neutral, so when considered with the four factors that favor transfer Datanet cannot show a clear and indisputable right to mandamus relief. The Petition should be denied.

I.    **The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in analyzing the ease of sources of proof factor.**

The District Court correctly determined that the Magistrate Judge committed clear error in finding the sources of proof factor weighed against transfer. Appx476. The District Court provided a thorough analysis of the Magistrate Judge's Order in reaching its conclusion, and it applied the correct law in doing so. Appx472-476.

## A.     The sources of proof are primarily in NDCA.

As one district court has recognized, this Court "has time and again reminded [the WDTX] to look to where the custodians of relevant electronic documentation [are], as they may bear on the relative ease of access to sources of proof." *Honeywell Int'l Inc. v. Zebra Techs. Corp*., No. 6:21-CV-1010-ADA, 2022 WL 2161058, at *8 (W.D. Tex. June 15, 2022); *see also Phoji, Inc. v. Atlassian, Inc.,* No. 6:21-CV-00888-ADA, 2022 WL 2392876, at *8 (W.D. Tex. July 1, 2022) (finding "the location of custodians, like the several California-based Atlassian personnel above, likely bears on the relative ease of access to sources of proof" and "that Slack may have information relevant to damages and invalidity at its headquarters in California").

As to the documents, the District Court explained that "[t]he correct inquiry when addressing electronic documents" does not consider convenience but rather considers "the *locations* where electronic documents are stored." Appx473 (quoting *Volkswagen*, 545 F.3d at 315, and citing *Juniper*, 14 F.4th at 1322, *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021), and *Def. Distributed v. Bruck,* 30 F.4th 414, 434 & n.25 (5th Cir. 2022)).  And even then, the question is "relative ease of access"—*i.e*., whether the source code (located in Oregon) is more easily accessible in the NDCA or the WDTX.  *In re Apple Inc*., No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021) ("The district court

should have compared the ease of access in the [WDTX] *relative* to the ease of access in the [NDCA]." (emphasis in original)).  Here, the source code in Oregon is closer and more easily accessible from the NDCA than the WDTX.  Appx473. The District Court did not clearly abuse its discretion in coming to that conclusion.

As to the employees, the District Court explained how the record sufficiently showed "over 300 of the 800 NDCA employees [of Dropbox] are software engineers who are primarily responsible for engineering, development, and product design," and "[t]he remaining 500 NDCA employees include[] Dropbox's senior management team (who are the primary decision makers on technical functions, marketing, strategy, and financial recordkeeping) and other employees, including those responsible for product design, sales, and marketing."  Appx474.  And the District Court properly credited evidence showing San Francisco "is where the primary technical, marketing strategy, and financial recordkeeping decisions for the accused products are made."  *Id.*

As the District Court further recognized, Dropbox's "employees with the relevant technical knowledge are likely to be on the File Sync sub-team of Dropbox's Product Platform team," and "the majority of the 35 total sub-team members primarily work or reside in or around San Francisco."  *Id.*  Critically, the evidence showed "Dropbox's current employees in San Francisco are those likely to create and maintain relevant documents."  Appx474-475.

7

The fact that some Texas-based employees may be able to access source code stored in Oregon should not carry much weight.  Appx473, Appx475.  As the District Court explained, although Texas-based Dropbox employees "may hold requisite credentials to *access* relevant information," the evidence showed that "the *vast majority of* these employees do not have decision making authority," and "[*n*]*one* of the Texas-based employees were employed by Dropbox during the *creation* or *implementation* of engineering, design, development, or source code for the Accused Product."  Appx475 (emphasis in original).  The District Court further explained:

> For Dropbox's Texas-based employees, who in no way partook in the creation or implementation of the source code for the accused product, "mere access" pales in comparison to the NDCA-based employees who "create and maintain relevant documents," have "decision-making authority," and are on the most relevant sub-team with technical knowledge[.]

Appx475 (citing Appx34 at ¶¶ 9, 12); *see also In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021) (acknowledging "[w]hile electronic storage makes documents more widely accessible," analysis of this factor remains focused on physical location).[1]  Therefore, the sources of proof

---

[1] Dropbox never "conceded that every relevant document can be retrieved in Western Texas."  Pet. at 19 (citing Appx208).  The citation that Datanet purports to provide for such a proposition (Appx208) encompasses a page and a half of deposition testimony from Dropbox's venue declarant.  At best, that testimony shows it may be "possible" for some Dropbox engineers to remotely access certain Dropbox source code in the WDTX and that the declarant could not think at that

8

are primarily in NDCA, and this factor weighs in favor of transfer.

**B.    The Magistrate Judge clearly erred when weighing the sources of proof factor.**

The Magistrate Judge was led astray by erroneously conflating evidence of source code stored on a server located in Oregon with evidence of customer data stored in a datacenter in Richardson, Texas.  Appx472-473; *see* Appx355-356.  But, while Datanet itself has adamantly maintained that the *source code* in Oregon is critical to its understanding of how the accused products operate, *see* Appx408-409, there is nothing in the record to suggest that *customer data* would need to be accessed, produced, or analyzed in this case.   Appx472-473.   The Richardson datacenter is irrelevant.

The Magistrate Judge also erroneously concluded that the number of Dropbox employees in NDCA was "unpersuasive" because Dropbox "failed to detail the relevance of those employees" or provide "specific detail" about them.  Appx356-357; Appx474-476.   But, as the District Court explained, "Dropbox's purported NDCA custodians, although not specifically named, have decision-making authority and technical knowledge."  Appx476.   There was no need for Dropbox to provide a more detailed breakdown of names.  *Id.*; *see In re Pandora Media, LLC*, No. 2021-

---

time of additional information for which remote access would be unavailable. Appx208.

172, 2021 WL 4772805, at *5 (Fed. Cir. Oct. 13, 2021) ("[I]t is not necessary to do more at this point in the litigation than to show that the potential witnesses have relevant and material information." (citation omitted)); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (explaining that "[r]equiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary").

### C.    Datanet's additional arguments do not show a clear and indisputable legal right to the relief it seeks.

Datanet's additional arguments in the Petition do not show any error by the District Court, let alone an error that justifies mandamus relief.

Datanet attempts to discount the evidence of personnel with decision-making authority in the San Francisco area by arguing that "the question is whether they are document custodians, not whether they have decision making authority." Pet. at 19. But the location where "primary corporate decision making takes place" is indicative of the location having evidence "likely to be relevant and material to the case." *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022) (agreeing with Netflix that its sources of proof would be located at its headquarters in the NDCA where, *inter alia*, "Netflix maintains its financial documentation in the Los Gatos headquarters, where Netflix's primary corporate decisionmaking takes place").

10

Datanet argues that there are two Dropbox employees in Texas "who have this [decisionmaking] authority" too. Pet. at 20, 36. But the record indicates at most only one of those two has any decisionmaking responsibility. *See, e.g.*, Appx171 at 62:11-63:21. And even that person's responsibilities concern channel sales, which is a subset of Dropbox's sales. Appx241; Appx340 at 59:24-60:21. Thus, the vast majority of relevant decisionmaking authority pertaining to the accused products resides in or around San Francisco, not Waco. Appx241; Appx20; Appx33 at ¶ 6.[2]

Further, Dropbox's Texas-based employees were not even employed "during the creation or implementation of engineering, design, development, or source code for the Accused Product, which occurred before 2018." Pet. at 20 (quoting Appx475). According to Datanet, "[w]hether someone was employed by Dropbox before 2018 has no bearing on whether they are document custodians *today*." *Id.* (emphasis in original). But the fact that certain Texas-based employees may currently work on the relevant technical teams, as Datanet suggests (Appx138-139; Appx358; Appx429), does not make them custodians of documents related to the engineering, design, development, or source code for the accused products, which

---

[2] As such, Datanet's statement that "Dropbox identified zero California custodians with decision making authority" is patently false. *Compare* Pet. at 20 *with* Appx33-34 at ¶ 9.

11

were all created before 2018. Appx241-242; Appx246; Appx419; Appx441; Appx475; Appx482.

*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023), on which Datanet relies, is inapposite. Unlike in *TikTok*, where the district court relied on the petitioners' general "large presence in the Western District of Texas" as raising an "extremely plausible and reasonable inference" that employees there "possess some relevant documents," 85 F.4th at 359-60, here the District Court properly considered specific evidence that (i) the source code *for the accused technology* is in Oregon, Appx473 (citing Appx34 at ¶ 10; Appx35 at ¶ 16), (ii) the primary technical, marketing, strategy, and financial decisions *for the accused products* are made in San Francisco, Appx474 (citing Appx411), and (iii) the Dropbox employees with relevant technical knowledge about the *accused products* are likely to be on a specific team with members primarily working or residing around San Francisco, *id.* (citing Appx411; Appx34 at ¶ 12; Appx316).

Datanet also cites *Defense Distributed v. Bruck*, 30 F.4th at 414, to suggest that Dropbox relied on only "attorney argument" to support its showing for this factor. Pet. at 16-18. But in *Defense Distributed*, unlike in this case, the movant merely stated without more evidence that "the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey." *Def. Distributed*, 30 F.4th at 434. This stands in stark contrast to the specifically identified proof and

witnesses in and around the NDCA.  Appx245-246.  That the District Court cited the briefing instead of each individual source of evidence cited therein does not diminish the persuasiveness of the underlying evidence.  *See* Appx474 (citing Appx437, which in turn cited Appx245-246).

Finally, Datanet's reliance on its alleged "documents in Colorado Springs" cannot show error by the District Court.  Pet. at 14.  As this Court has explained, "the fact that some evidence is stored in places outside both forums does not weigh against transfer."  *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021); *see In re Toyota Motor Corp*., 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

\*      \*      \*

The District Court did not clearly abuse its discretion in finding the Magistrate Judge clearly erred in his analysis of the sources of proof factor.  Datanet is not entitled to extraordinary mandamus relief.

## II.  The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in analyzing the compulsory process factor.

### A.  The compulsory process factor favors transfer.

The evidence demonstrated that the only "potential third-party witnesses associated with the accused Dropbox products and services would be former

Dropbox employees who previously worked on or had decision making responsibilities for the File Sync sub-team of Dropbox's Product Platform team." Appx477 (citing Appx35 at ¶ 17; Appx184 at 114:1-115:9). Such former employees worked in or are known to reside near San Francisco. Appx477 (citing Appx35 at ¶ 17; Appx184 at 114:1-115:9). And "Dropbox explicitly expressed the relevance of its witnesses by indicating that the File Sync sub-team" in the San Francisco area "is likely to have relevant technical knowledge." Appx478 (citing Appx35 at ¶ 17; Appx184 at 114:1-115:9). Therefore, the District Court did not clearly abuse its discretion in finding the Magistrate Judge clearly erred in analyzing compulsory process. Appx477; *see In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (former employees residing in transferee district is relevant to compulsory process factor). The Magistrate Judge clearly erred in weighing the compulsory process factor.

At the heart of the Magistrate Judge's error was his finding that, "[a]lthough Dropbox alleges there are far more former employees in NDCA than WDTX, Dropbox fails to name any of the individuals specifically or identify their individual roles." Appx477 (citing Appx360). But such specificity of individuals is not required. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("The district court weighed this factor against transfer based solely on the fact that Largan had identified its third parties by name whereas HP identified the corporate entities

14

CONFIDENTIAL MATERIAL REDACTED FROM PAGE

without specifying individual employees. However, we cannot say that should negate the potential benefits of transfer.").

Also clearly erroneous was the Magistrate Judge's decision to give significant weight to Datanet's "more specific list of" former Dropbox employees in Texas "who were employed by Dropbox in the six years preceding the filing of the complaint." Appx478 (citing Appx138-139). On review, the District Court determined that "Datanet provided little explanation for its conclusory assertion that these former employees 'have relevant knowledge.'" *Id.* (citing Appx139; Appx358). For example, although Datanet argued that "█ of these former Texas employees . . . were members of the 'Platform' team," the undisputed evidence showed that the most relevant team is the File Sync sub-team with current and former members in or around San Francisco. *Id.*

The Magistrate Judge's decision to rely on "two former employees in Texas" who "appear necessary to the case and do not have any equivalents in NDCA" was also faulty. *See* Appx479 (quoting Appx359). As the District Court noted, there is "no evidence or suggestions made by Datanet or Dropbox" to "support such a finding." *Id.* Datanet shows no error in that determination by the District Court, let alone a clear abuse of discretion.

Instead, Datanet tries to pass its mandamus burden to Dropbox: "Dropbox made no attempt to argue that [the two former employees] are not relevant or that

15

they lack 'unique' knowledge." Pet. at 30. But even if so, the District Court's decision to give little weight to those two former employees is not a clear abuse of discretion.

And the case Datanet cites in support, *Defense Distributed*, 30 F.4th at 434, is distinguishable on the facts on this point, as in *Defense Distributed* the New Jersey Attorney General sought to transfer a case from the WDTX to New Jersey but failed to "identif[y] any witness who is subject to compulsory process in New Jersey but not in Texas." Pet. at 30 (citing *Def. Distributed*, 30 F.4th at 434). Here, in contrast, Dropbox's venue-declarant averred that (i) any potential third-party witnesses associated with the accused products would be former Dropbox employees that worked in or were known to reside near San Francisco, Appx35 at ¶ 17, and (ii) over a thousand former employees who worked or resided around San Francisco according to their last known addresses had engineering, sales, or marketing roles related to the accused technology, Appx347 at ¶ 3—all of which would be outside of the 100-mile subpoena reach in the WDTX. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) ("[T]he subpoena powers of the Northern District of California may be expected to be invaluable, in the event process is required to hale relevant witnesses into court.")

Next, the District Court found clear error in the Magistrate Judge's decision to assign the same weight to the lists of witnesses from each party because the parties

will call "at most a few dozen with depositions and at most one dozen at trial." Appx479 (quoting Appx360). The District Court was right to do so, as this Court has previously rejected the same rationale. *See Juniper*, 14 F.4th at 1319 (district court erred in discounting location of majority of witnesses by reasoning that only a few will actually testify at trial).

Thus, as the District Court determined, the Magistrate Judge clearly erred in concluding that "nothing under this factor demonstrates that an availability of compulsory process to secure the attendance of witnesses in NDCA favors transfer or makes NDCA clearly more convenient." Appx477 (citing Appx360). There is no clear abuse of discretion in this determination.

### B. Datanet's remaining arguments show no clear abuse of discretion to warrant mandamus relief.

Datanet also argues that "the District Court erred by finding this [compulsory process] factor favors transfer because Dropbox has a greater number of relevant former employees in Northern California" when, according to Datanet, "Dropbox has never said how many relevant former employees it alleges are in Northern California." Pet. at 26. Similarly, Datanet attempts to rely on the Magistrate Judge Judge's characterization of Dropbox's argument as one based on "the sheer size of its corporate footprint in NDCA." *Id.* at 22 (citing Appx358).

Dropbox's evidentiary showing was more than just a numbers game. As the District Court recognized, "Dropbox explicitly expressed the relevance of its

17

witnesses by indicating that the File Sync sub-team is likely to have relevant technical knowledge and was located in the San Francisco area." [3]  Appx478 (citing Appx35 at ¶ 17; Appx184 at 114:1-115:9).  Dropbox's venue-declarant explained that "[a]ny potential third-party witnesses associated with the accused Dropbox products and services would be former Dropbox employees who previously worked on or had decision making responsibilities for the File Sync sub-team of Dropbox's Product Platform team."  Appx35 at ¶ 17.  He specifically averred that "[a]ny such former employees would have worked in or were known to reside near San Francisco."  *Id.*  And he testified that none were in Texas. Appx184 at 113:7-25.  Dropbox was required to show nothing more at this stage to prevail on this factor.  *See In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (compulsory-process factor favored transfer where movant identified "potential witnesses" subject to subpoena power in transferee district).

*     *     *

---

[3] Datanet argues that Dropbox's supplemental declaration attached to its reply in support of the transfer motion was somehow "waived."  Pet. at 26 n.1.  But the District Court did not find any forfeiture or waiver—a finding that is within a district court's discretion and far from something that warrants mandamus relief.  *See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1132 (Fed. Cir. 2019) ("We review a district court's decision to exercise or, as here, not exercise its inherent power to find waiver for an abuse of discretion."); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 488 n.1 (5th Cir. 2014) (explaining that "[a] district court's ruling on waiver is typically reviewed for abuse of discretion").

Datanet has not shown the District Court clearly abused its discretion in finding clear error in the Magistrate Judge's weighing of the compulsory process factor.

## III.    The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in weighing the willing witnesses factor.

### A.    The willing witness factor favors transfer.

If the case stayed in WDTX, all willing witnesses would likely have to travel to trial, but at least some willing witnesses would not have to travel to NDCA. Dropbox established that it has approximately 35 current employees assigned to the teams most relevant to the issues in this case, and the majority are based in San Francisco.  Appx25, n.1; Appx34 at ¶ 12.  Dropbox's venue declarant averred that "[t]he Dropbox witnesses in this action having relevant technical knowledge of the accused technology are likely to be on the File Sync sub-team of Dropbox's Product Platform team," and "[t]here are approximately 35 individuals on the File Sync sub-team, the majority of whom primarily work or reside in or around San Francisco." Appx34 at ¶ 12.

Dropbox's venue declarant further explained that "the personnel most knowledgeable about Dropbox's marketing and finances, including [for] the accused technology, are also in the San Francisco area," including the venue declarant himself.  *Id.*  And he declared that Dropbox employees engaged in "marketing

19

strategy or financial recordkeeping and decision making are located in the San Francisco area," again including himself. Appx34-35 at ¶ 15. It is undisputed that "Dropbox's expected trial witnesses are also located in the [NDCA]." Appx35 at ¶ 18.

For this reason, the District Court did not clearly abuse its discretion in finding the willing witness factor favors transfer. Appx483; *see In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (district court erred in discounting willing witness factor when key witnesses reside in transferee district and none live in Texas).

## B. The Magistrate Judge clearly erred in weighing the willing witness factor.

In analyzing the willing witness factor, the Magistrate Judge focused on the cost of attendance for Datanet's sole member, Warren Roach, and found that weighs against transfer. Appx481. Mr. Roach does not live in or near WDTX; he lives in Colorado. Appx20; Appx41; Appx153 at ¶ 6. But the Magistrate Judge relied on a paragraph from Mr. Roach's declaration that, "based [on] internet searches, reputable, four-star hotels in Waco near the federal courthouse charge a reasonable $118 to $185," and "the closest four-star hotel in San Francisco (San Francisco Proper hotel) was multiple blocks from the Courthouse and cost $475/night." Appx153 at ¶ 7; *see* Appx361 (citing Appx153 ¶ 7 ("WDTX is a more convenient venue for him to attend trial according to his declaration")); Appx363.

20

As the District Court explained, however, "Warren Roch's cost of attendance neither favors nor disfavors transfer." Appx481. And the proper inquiry "focuses on travel time over minute details like number of airplane stops." Appx481 (quoting *Google*, 2021 WL 4427899, at *4). Yet Datanet came forward with no evidence on travel time that weighed in favor of or against transfer.

Indeed, the Magistrate Judge noted that "flights to Waco and flights to San Francisco have approximately the same duration and price." Appx362; *see also* Appx363 (explaining that "the duration and cost of air travel to the two venues from Colorado Springs is equivalent"). This is irreconcilable with the Magistrate Judge's ultimate conclusion that "WDTX is a more convenient venue for [Mr. Roach] to attend trial according to his declaration." Appx361; *see Pandora*, 2021 WL 4772805, at *6 (finding witness convenience "equivalent for either forum" when travel times to each were similar).

The Magistrate Judge also relied on "Dropbox's lack of naming individual employees to determine that this factor disfavored transfer." Appx481 (citing Appx363). He expressly declined to give the location of those Dropbox employees "as much" weight "as the witnesses who are specifically identified." Appx363. As the District Court explained, this was clear error under this Court's precedent: "[T]he Court cannot agree that by naming departments/teams within the company instead of specifically identifying individual employees negates the overwhelming

21

**CONFIDENTIAL MATERIAL REDACTED FROM PAGE**

relevance and materiality of those witnesses." Appx482 (citing *In re HP, Inc.*, 826 F. App'x at 903). Datanet fails to even address this aspect of the District Court's decision in its Petition.

The Magistrate Judge also improperly credited Datanet's argument that █ Dropbox employees working remotely in Texas were "relevant to the accused technology" and wrongly speculated that "Texas-based software engineers on the 'Platform' and 'Dropbox Core' teams . . . appear to have very similar roles to the File Sync sub-team." Appx363. As the District Court explained, "the Magistrate Judge overlooked Dropbox's clarifications on relevancy as it relates to its list of █ WDTX Dropbox employees." Appx482; *see* Appx363. Assessing the "relevance and *materiality* of the information the witness[es] may provide," Appx481 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (emphasis in original)), the District Court explained how the Magistrate Judge overlooked evidence that, *inter alia*, these employees *do not* have decisionmaking authority, including decisionmaking authority relating to the accused product, and none of the Texas-based software engineers or programmers are assigned to the teams most relevant to the technical issues in this case. Appx482 (citing Appx246-247). Further, none of those software engineers worked at Dropbox during the creation or implementation of the accused product's technical aspects—events that occurred before 2018. *Id.* (citing Appx246-247).

As to the Magistrate Judge's assumption that "Texas-based software engineers on the 'Platform' and 'Dropbox Core' teams . . . appear to have very similar roles to the File Sync sub-team," Appx363, the District Court found that the Magistrate Judge "surmi[sing]" in this way was clearly erroneous, Appx482. As the District Court explained, this same error was admonished by this Court in *Atlassian,* 2021 WL 5292268, at *3. In that case, this Court faulted the district court for incorporating "a considerable amount of conjecture" into its finding that the movant's employees in the transferor and transferee forum had "at least the same knowledge" where evidence showed employees in the transferor forum were not responsible for development and were "not knowledgeable about the accused functionalities." Appx482-483 (quoting *Atlassian,* 2021 WL 5292268, at *3).

\*    \*    \*

The willing witness factor plainly favors transfer, and the District Court properly found the Magistrate Judge to have clearly erred in concluding otherwise. Datanet has not shown a clear abuse of discretion in the District Court's consideration of this factor.

**CONFIDENTIAL MATERIAL REDACTED FROM PAGE**

**IV.    The District Court did not clearly abuse its discretion in holding the Magistrate Judge committed clear error in weighing the local interest factor.**

    **A.    NDCA has a significant local interest, while WDTX does not.**

The only evidence of record relevant to the local interests factor is that the accused products were designed and developed in San Francisco.  *See* Appx23; Appx33 at ¶9; Appx34 at ¶12.  Dropbox offered sworn testimony that the "the teams that would have the design and development responsibilities for the accused technology are based in San Francisco."  Appx172 at 68:13-69-1.  And neither party is a citizen of Texas.

As such, the District Court correctly concluded that "the record reflects that the NDCA has the greater relevant factual connection to this matter, and citizens of the NDCA have a greater stake in the litigation than WDTX's citizens."  Appx484 (citing Appx1346; Appx171 at 61:22-62:2, 64:11-1).

Datanet contends that the District Court "inexplicably cited three pieces of evidence, none of which support the Court's conclusion" that this factor should favor transfer.  Pet. 41.  Datanet is incorrect.

The first citation is to Datanet's reply brief (Appx484 (citing Appx134)), wherein Datanet purported to identify "███ former employees within the [WDTX] Court's subpoena power who did relevant work on relevant teams."  Appx134. However, the ███ former employees in Texas pales in comparison to the 800 current

employees in the NDCA, where Dropbox is headquartered.  Appx20; Appx33 at ¶ 8.
And Dropbox has 1,600 former employees that had engineering, sales, or marketing
roles related to the accused technology and were known to last reside in or near the
NDCA.  Appx318; Appx347 at ¶ 3.

This discrepancy supports the District Court's conclusion that "the citizens of
the NDCA have a greater stake in the litigation than WDTX's citizens."  *See, e.g.*,
*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding that
the transferee forum's local interest "remains strong because the cause of action calls
into question the work and reputation of several individuals residing in or near that
district and who presumably conduct business in that community").  In view of this
support alone, there can be no clear and indisputable error here.

The second and third citations are to deposition testimony from Dropbox's
venue declarant.  Appx484 (citing Appx171 at 61:22-62:2, 64:11-1).  There, the
witness explained his understanding of which teams would have knowledge and
perform development, design, and development activities in connection with the
accused technology and how none of Dropbox's employees located in Texas were
or are on those teams.  *See also* Appx319 (citing Appx339-340 at 39:9–15, 59:4–23
(describing the investigation and explaining "the significant engineering, marketing
and pricing decisions are not made in Texas")).  This evidence too supports the
District Court's reasoning; it does not show clear and indisputable error.

**B.     The Magistrate Judge clearly erred when weighing the local interests.**

As the District Court recognized, the Magistrate Judge's clear error in considering the local interest factor stemmed from its "reli[ance] upon Datanet's leap in logic." Appx484. That "leap in logic" took remote employees' "'access' to the accused product's source code" as a "strong indicat[or] that relevant design and development activities are ongoing in WDTX." Appx484. But, as the District Court noted, "this is not the appropriate inquiry." *Id.* Instead, "[t]he Fifth Circuit has made clear that the local interest inquiry concerns the events that gave rise to a suit and non-party citizens, and not the parties' connections to the venue." *Id.* (citing *In re Clarke*, 94 F.4th at 511).

**C.     Datanet's "credibility" argument does not show that the District Court erred.**

Finally, Datanet contends that the "Magistrate Judge's conclusion on this factor was entitled to especially great deference because it was based on a credibility determination." Pet. at 39. But a "credibility determination" is not insulated from review, especially where the record is replete with evidence of confusion on the part of the Magistrate Judge. *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1381 (Fed. Cir. 2010) (recognizing credibility determinations are not completely shielded from appellate review).

Here, Datanet misled the Magistrate Judge into believing "Dropbox did not investigate whether the people who developed the Accused Products reside in Texas" because—according to Datanet—Dropbox's witness was unable to identify minutia as to "'when the technology was originally developed,' 'who originally developed the technology,' 'where any of the people who originally developed the technology reside,' 'whether any of the people who originally developed the technology reside in Texas,' or if 'Dropbox tr[ied] to investigate where any of the people who developed the technology live.'" Appx319 (citing Appx341 at 70:16-71:9).

But that was far from the case. Although the declarant could not identify a specific month or day, he knew that the accused technology was developed before 2018.[4]  Appx191 at 141:7–142:3.  He also knew that it was designed and developed at Dropbox's headquarters in San Francisco, and he explained the basis for his understanding.  Appx172-173 at 68:13–69:24; Appx33 at ¶ 9.

As to what "Dropbox tr[ied] to investigate," Appx366, Dropbox's venue declarant testified to an investigation that "included understanding which teams would have knowledge and perform development, design and development activities of the accused technology and then determining if any employees located in Texas

---

[4] Dropbox explained the same in response to Datanet's venue-related interrogatories. *See* Appx242, Appx244, Appx246.

were on those teams or are on those teams." Appx319 (citing Appx339-340 at 39:9–15, 59:4–23 (describing investigation and explaining "the significant engineering, marketing and pricing decisions are not made in Texas")). The witness further explained that information regarding last known addresses of former Dropbox employees was obtained from records maintained by Dropbox's human resource department in the ordinary course of business. Appx347 at ¶ 3.

Similarly, Dropbox explained in its interrogatory responses that "[d]ecision-making authority concerning relevant information pertaining to overall marketing, revenue, profits, or cost information for the Accused Product ultimately resides with employees in or around San Francisco." Appx241. And Dropbox investigated the scope of work performed by the 35 specific individuals identified as current employees on the team having relevant technical knowledge of the accused technology. *See* Appx34 at ¶12.

Aside from the witness's inability to recall certain specifics (such as the names or addresses of dozens, if not hundreds, of employees), the Magistrate Judge's Order included no reason to distrust or discount the results of this investigation. Thus, the District Court properly took issue with the Magistrate Judge's so-called "credibility determination." Datanet has not shown clear and indisputable error in this reasoning either.

\*    \*    \*

28

The local interest factor plainly favors transfer, and the District Court properly found the Magistrate Judge clearly erred in concluding otherwise.  Datanet has not shown a clear abuse of discretion in the District Court's consideration of this factor.

The District Court correctly concluded four factors favor transfer, and at this point the parties do not dispute that the remaining four factors are neutral.  It was not patently erroneous for the District Court to transfer the case to NDCA.

## CONCLUSION

To prevail Datanet must show not just that the District Court improperly weighed the factors while reviewing the Magistrate Judge's order but also that the District Court clearly and indisputably erred in doing so.  It cannot meet this high bar.  The Court should deny Datanet's Petition.

Dated: July 12, 2024

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Julie S. Goldemberg*

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
T. 215.963.5000
F. 215.963.5001
julie.goldemberg@morganlewis.com

Michael J. Lyons
Austin L. Zuck
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
T. 650.843.4000
F. 650.843.4001
michael.lyons@morganlewis.com
austin.zuck@morganlewis.com

Nicholas A. Restauri
Karon N. Fowler
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
T. 312.324.1000
F. 312.324.1001
nicholas.restauri@morganlewis.com
karon.fowler@morganlewis.com

***Counsel for Respondent
Dropbox, Inc.***

29

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d)(1) because it contains 6,477 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

Dated: July 12, 2024                          */s/ Julie S. Goldemberg*
                                              Julie S. Goldemberg
                                              *Counsel for Respondent*
                                              *Dropbox, Inc.*

## CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing document contains 3 unique words (including numbers) marked confidential.  This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

Dated: July 12, 2024

*/s/ Julie S. Goldemberg*
Julie S. Goldemberg
*Counsel for Respondent*
*Dropbox, Inc.*